UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JARRAD L. MASTIN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-02365-SEB-DML |
| | ) | |
| DUSHAN ZATECKY Supt. - Warden, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Jarrad L. Mastin is serving a 90-year sentence for his 2011 Delaware County, Indiana convictions for child molestation. He brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons that follow, Mr. Mastin's petition for a writ of habeas corpus is **denied** and the action **dismissed with prejudice**. In addition, the Court finds that a certificate of appealability should not issue.

### I. Factual and Procedural Background

District court review of a habeas petition presumes all factual findings of the state court to be correct, absent clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007). On direct appeal, the Indiana Court of Appeals summarized the relevant facts and procedural history:

> Mastin's daughter, K.M., was born on July 15, 2004, and placed in the guardianship of her maternal grandmother, Diana Winans ("Winans"). In 2009, K.M. began experiencing severe problems using the bathroom. According to Winans, K.M. was "peeing blood" and screaming, so Winans took K.M. to the hospital. (Tr. 78.)
> K.M. was examined and found to have blisters on her labia and rectum. She was originally diagnosed with canker sores; however, test results later confirmed that K.M. had been infected with Type II genital herpes. In an interview with City of Muncie police officers, Mastin confessed to having engaged in sexual contact with K.M.

> On January 28, 2010, the State charged Mastin with eight counts of child molesting. Five counts were dismissed and, on July 18, 2011, Mastin was brought to trial before a jury on the remaining three counts (two alleging sexual intercourse and one alleging deviate sexual conduct). He was convicted as charged. On August 30, 2011, Mastin was given consecutive sentences of twenty years for each Class B felony conviction and fifty years for his Class A felony conviction, providing for an aggregate sentence of ninety years.

*Mastin v. State*, 966 N.E.2d 197, 200 (Ind. Ct. App. 2012).

Mr. Mastin appealed raising five issues: (1) whether the trial court impermissibly allowed hearsay with Winans's testimony that K.M. said her "daddy plays secret games"; (2) whether the trial court impermissibly allowed hearsay without following the legal procedures for naming K.M. a "protected person"; (3) whether there was sufficient evidence to convict him of having sexual intercourse with K.M.; (4) whether the prosecutor committed prosecutorial misconduct in his closing comments; and (5) whether the sentence was appropriate in light of the nature of the offense and character of the offender. On April 12, 2012, the Indiana Court of Appeals affirmed Mr. Mastin's conviction and sentence. Mr. Mastin sought further review by the Indiana Supreme Court, but only on the second and fifth grounds. The Indiana Supreme Court denied transfer on June 28, 2012.

On January 30, 2013, Mr. Mastin petitioned for state post-conviction relief. Mr. Mastin raised two claims of error: ineffective assistance of trial counsel for failing to communicate guilty plea offers to him and ineffective assistance of appellate counsel for failing to argue his sentence was inappropriate. The trial court denied the petition on April 21, 2016 after an evidentiary hearing.

Mr. Mastin appealed, contending that the post-conviction court abused its discretion by not giving him the transcript from the evidentiary hearing, that his trial counsel was ineffective, and that his appellate counsel was ineffective. The Indiana Court of Appeals found that because the

record supported the post-conviction court's determination that Mr. Mastin was informed of the guilty plea offers made to him, the post-conviction court did not err in concluding Mr. Mastin's trial counsel did not render ineffective assistance. *Mastin v. State*, 2017 WL 405757, at *4 (Ind. Ct. App. Jan. 31, 2017). As to his appellate counsel, the Indiana Court of Appeals rejected Mr. Mastin's claim because he "failed to provide the post-conviction court with a copy of his direct appeal appellant's brief. As it is impossible to gauge the quality of appellate counsel's performance without consideration of the appellate work product, we cannot say Mastin has met his burden of proving appellate counsel's performance was deficient." *Id.* Finally, the court rejected Mr. Mastin's claim for the evidentiary hearing transcript as no Indiana statute or rule requires the provision of a transcript of the post-conviction proceeding at public expense before the denial or dismissal of a petition. *Id.* at *5. Mr. Mastin sought review from the Indiana Supreme Court, but that court denied transfer on April 20, 2017.

On July 12, 2017, Mr. Mastin filed this petition for a writ of habeas corpus.

## II. Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). Mr. Mastin's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).

The Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and has emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773

(2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

Where a claim has been adjudicated on the merits in state court, habeas relief is available under the deferential AEDPA standard only if the state court's determination was (1) "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Thus, "under AEDPA, federal courts do not independently analyze the petitioner's claims; federal courts are limited to reviewing the relevant state court ruling on the claims." *Rever v. Acevedo*, 590 F.3d 533, 536 (7th Cir. 2010). "A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner." *Brown v. Payton*, 544 U.S. 131, 141 (2005) (internal citations omitted). "Under § 2254(d)(2), a decision involves an unreasonable determination of the facts if it rests upon fact-finding that ignores the clear and convincing weight of the evidence." *Goudy v. Basinger,* 604 F.3d 394, 399–400 (7th Cir. 2010) (citing *Ward v. Sternes,* 334 F.3d 696 (7th Cir. 2003)). "The habeas applicant has the burden of proof to show that the application of federal law was unreasonable." *Harding v. Sternes*, 380 F.3d 1034, 1043 (7th Cir. 2004) (citing *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002)).

## III. Discussion

Mr. Mastin raises seven grounds in his petition:

*Ground One*: whether the trial court impermissibly allowed hearsay when it allowed Winans's testimony that K.M. said her "daddy plays secret games";

*Ground Two*: whether the trial court impermissibly allowed hearsay without following the legal procedures for naming K.M. a "protected person";

*Ground Three*: whether there was sufficient evidence to convict him of having sexual intercourse with K.M.;

*Ground Four:* whether the prosecutor committed prosecutorial misconduct in his closing comments;

*Ground Five:* whether the sentence was appropriate in light of the nature of the offense and character of the offender;

*Ground Six:* whether his appellate counsel was ineffective for failing to raise an adequate inappropriate sentence claim; and

*Ground Seven:* whether his trial counsel was ineffective for failing to show him all of his plea deals.

Respondent argues that Grounds One, Three, and Four of Mr. Mastin's claims are procedurally defaulted, Grounds Two and Five are not cognizable as they relate to state-law errors, and Grounds Six and Seven are meritless.

### A.     Procedurally Defaulted Grounds: Grounds One, Three and Four

"Inherent in the habeas petitioner's obligation to exhaust his state court remedies before seeking relief in habeas corpus, *see* 28 U.S.C. § 2254(b)(1)(A), is the duty to fairly present his federal claims to the state courts." *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). To

meet this requirement, a petitioner "must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Id.* at 1025-26. In Indiana, that means presenting his arguments in a petition to transfer to the Indiana Supreme Court. *Hough v. Anderson*, 272 F.3d 878, 892 (7th Cir. 2001). A federal claim is not fairly presented unless the petitioner "put[s] forward operative facts and controlling legal principles." *Simpson v. Battaglia*, 458 F.3d 585, 594 (7th Cir. 2006) (citation and quotation marks omitted). Procedural default "occurs when a claim could have been but was not presented to the state court and cannot, at the time that the federal court reviews the habeas petition, be presented to the state court." *Resnover v. Pearson*, 965 F.2d 1453, 1458 (7th Cir. 1992).

Mr. Mastin raised Grounds One, Three, and Four in his direct appeal to the Indiana Court of Appeals. However, he did not present those issues in his petition for review to the Supreme Court of Indiana. *See* Dkt. 10-6 at 2 (Mastin's Petition for Transfer filed May 14, 2012). Because Mr. Mastin did not fairly present these claims to each and every level in the state court system, he failed to exhaust his state court remedies. At this juncture, this failure constitutes a procedural default of these grounds.

"A procedural default can be overlooked when the petitioner demonstrates cause for the default and consequent prejudice, or when he shows that a fundamental miscarriage of justice will occur unless the federal court hears his claim." *Wilson v. Briley*, 243 F.3d 325, 329 (7th Cir. 2001) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). However, Mr. Mastin does not address the procedural default issue or make the required showing. Accordingly, Mr. Mastin is not entitled to habeas relief on Grounds One, Three and Four.

### B. State Law Claims: Grounds Two, Five, and Six

"A federal habeas court will not review a claim rejected by a state court if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Walker v. Martin*, 562 U.S. 307, 315 (2011) (citation and internal quotation marks omitted). This doctrine is premised on the rule that federal courts have "no power to review a state law determination that is sufficient to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). The state-law ground precluding review by a federal habeas court "may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." *Walker*, 562 U.S. at 315. Therefore, "[e]rrors of state law in and of themselves are not cognizable on habeas review." *Samuel v. Frank*, 525 F.3d 566, 574 (7th Cir. 2008) (citation and quotation marks omitted).

Ground Two relates to whether Mr. Mastin was denied a fair trial when the trial court permitted hearsay from the alleged victim without following the legal procedures outlined in I.C. 35-37-4-6 *et seq.* for naming the person a "protected person." The Protected Person statute, Indiana Code 35-37-4-6, allows for admission of otherwise inadmissible hearsay evidence relating to specified crimes whose victims are deemed "protected persons." *See Mastin v. State,* 966 N.E.2d 197, 200 (Ind. Ct. App. 2012) (citing *Tyler v. State*, 903 N.E.2d 463, 465 (Ind. 2009)). On this issue, the Indiana Court of Appeals held:

> Here, we must agree with Mastin that K.M.'s statement to her grandmother, made after a medical examination had concluded and no health professional was present, was not made to advance her medical diagnosis or treatment. We also recognize that the trial court apparently did not conduct a hearing, as contemplated by Indiana Code Section 35–37–4–6(e), before issuing its ruling that K.M. could be treated as a "protected person" and need not testify in open court.
> Nonetheless, the erroneous admission of evidence will be disregarded unless it affects the substantial rights of a party. *Hoglund v. State*, 962 N.E.2d 1230, 1238 (Ind. 2012). Although K.M.'s statement that "daddy plays secret games" should not have been admitted, there is substantial independent evidence of guilt.

(Tr. 84.) In his police interview, Mastin confessed that he had placed his penis in K.M.'s mouth, had licked K.M.'s vaginal area, and had pushed aside K.M.'s underwear and rubbed his penis on her for a few minutes. We are not persuaded that the hearsay reference to secret games deprived Mastin of a fair trial.

*Mastin v. State*, 966 N.E.2d 197, 201 (Ind. Ct. App. 2012).

The decision by the state court rests on a state law ground that is independent of any federal question and is adequate to support the judgment. Because Mr. Mastin fails to identify any unreasonable application of clearly established federal law and his argument is based solely on an alleged violation of Indiana law, he is not entitled to habeas corpus relief on this ground.

Ground Five relates to whether, under Indiana Appellate Rule 7(b), Mr. Mastin's sentence of 90 years was appropriate in light of the nature of the offense and the character of the offender. Mr. Mastin argues that, under Indiana law, his convictions should have run concurrently and not consecutively because he is not the "worst of the worst" and he had no prior felony convictions, no force was used, and he showed remorse. On this issue, the Indiana Court of Appeals held:

> A person who commits a Class A felony has a sentencing range of between twenty and fifty years, with the advisory sentence being thirty years. Ind. Code § 35–50–2–4. A person who commits a Class B felony has a sentencing range of between six and twenty years, with the advisory sentence being ten years. Ind. Code § 35–50–2–5. Mastin was sentenced to fifty years for one Class A felony and twenty years for each Class B felony. All sentences were consecutive. Accordingly, Mastin received the maximum possible sentence.
> Under Indiana Appellate Rule 7(B), this "Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In performing our review, we assess "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). A defendant "'must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review.'" *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007) (quoting *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)).
> The nature of Mastin's offenses is that he violated a position of trust with his biological daughter. Mastin gained access to K.M. when K.M. visited Mastin's mother overnight. Mastin warned K.M. not to tell anyone about their "secret

> games." The molestations began when K.M. was four years old and continued until K.M. was diagnosed with Type II genital herpes and Mastin was arrested.
>
> K.M. suffered an initial outbreak that her grandmother described as "horrible." (Tr. 90.) K.M. had blisters on her vagina and rectum, and would cry and scream because it was so painful to urinate. Kathryn Joyner, nurse practitioner, observed lesions on K.M.'s buttocks and explained that K.M. "could not pee because of ulcerations and swelling" and that her vulva was "all ulcerated." (Tr. 116–117.) According to Dr. Christopher Belcher, an infectious disease specialist to whom K.M. was referred after "frequent outbreaks of herpes," the "underwear genital area" was affected and K.M. was prescribed long-term medication. (Tr. 105.) Although milder and less frequent outbreaks could be anticipated with proper medication, it was not expected that K.M. would ever be cured.
>
> As for the character of the offender, Mastin has had no adult criminal convictions, other than for a misdemeanor trespass offense. Generally, this would militate toward a less than maximum sentence. However, the trial court determines the weight assigned to mitigating circumstances and a lack of criminal history does not automatically outweigh any valid aggravating circumstances. *McElroy v. State*, 865 N.E.2d 584, 592 (Ind. 2007). Here, given the very young age of the victim, the protracted length of time over which the molestations occurred, and the devastating consequences suffered by the victim, we are not persuaded that the trial court imposed upon Mastin an inappropriate sentence.

*Mastin v. State*, 966 N.E.2d 197, 202–03 (Ind. Ct. App. 2012).

The decision by the state court here rests on state law grounds that are independent of any federal question and is adequate to support the judgment. Because Mr. Mastin fails to identify any unreasonable application of clearly established federal law and his argument is based solely on an alleged violation of Indiana law, he is also not entitled to habeas corpus relief on this ground.

In Ground Six, Mr. Mastin raises an ineffective assistance of appellate counsel claim arguing that his appellate counsel failed to properly brief the issue of an inappropriate sentence arguing that his counsel provided "no argument or authority." Specifically, he argues that his appellate counsel, Mr. Rowland, should have compared Mr. Mastin's sentence to the sentences of other similarly-situated defendants when Mr. Rowland challenged Mr. Mastin's sentence.

The Indiana Court of Appeals rejected Mr. Mastin's claim regarding his appellate counsel because he "failed to provide the post-conviction court with a copy of his direct appeal appellant's

brief. As it is impossible to gauge the quality of appellate counsel's performance without consideration of the appellate work product, we cannot say Mastin has met his burden of proving appellate counsel's performance was deficient." *Mastin v. State*, 2017 WL 405757, at *4 (Ind. Ct. App. Jan. 31, 2017). The court noted that Mr. Mastin could have asked the trial court to take judicial notice of Mr. Rowland's brief under Indiana Evidence Rule 201(a)(2), but it was not required to do so on its own. *Id.* at n.3. The court also noted that Mr. Mastin attempted to remedy his failure to provide his direct appeal appellant's brief by including it in his appendix, but because it is clear the brief was not part of the record below, the Indiana Court of Appeals could not consider it in the appeal. *Id.* at n.4.

The decision by the state court here rests on a state law ground, "a procedural barrier to adjudication of the claim on the merits," *Walker*, 562 U.S. at 315, that is independent of any federal question and is adequate to support the judgment. Because Mr. Mastin fails to identify any unreasonable application of clearly established federal law and his argument is based solely on an alleged violation of Indiana Court of Appeals procedural law, he is not entitled to habeas corpus relief on this ground.

### C. Ground Seven: Ineffective Assistance of Trial Counsel

Finally, in Ground Seven, Mr. Mastin argues that his trial counsel was ineffective for not communicating plea bargains to him. His claim of ineffective trial counsel was previously raised in his petition for post-conviction review.

*Strickland v. Washington,* 466 U.S. 668, 684 (1984), supplies the clearly established federal law, as determined by the Supreme Court of the United States that governs a claim of ineffective assistance of counsel.

> *Strickland* recognized that the Sixth Amendment's guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel

for his defence" entails that defendants are entitled to be represented by an attorney who meets at least a minimal standard of competence. *Id.,* at 685–687. "Under *Strickland,* we first determine whether counsel's representation 'fell below an objective standard of reasonableness.' Then we ask whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Padilla v. Kentucky,* 559 U.S. 356, 366 (2010) (quoting *Strickland, supra,* at 688, 694).

*Hinton v. Alabama,* 134 S. Ct. 1081, 1087-88 (2014) (parallel citations omitted). The Supreme Court framed the determinative question as "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686. This Court must give "double deference" to the state court's ruling on ineffective assistance of counsel claims because habeas review under AEDPA requires a habeas court to give the state court and the defense attorney the benefit of the doubt. *Woods v. Donald,* 135 S. Ct. 1372, 1376 (2015).

The Indiana Court of Appeals applied the *Strickland* standard. *Mastin v. State,* 2017 WL 405757, at *3 (Ind. Ct. App. Jan. 31, 2017). The court also explained the standard for plea bargains: "[a]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Id.* (citing *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012)). Moreover, the court explained that to show prejudice from ineffective assistance of counsel, Mr. Mastin "must demonstrate a 'reasonable probability [he] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel'" and "a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it." *Id.* (citing *Frye,* 132 S. Ct. at 1409-10).

Applying these standards, the Indiana Court of Appeals held:

Mastin's testimony and recollection of events conflicts with that of his former counsel and the deputy prosecutor, as he asserts neither Mr. Quirk nor Mr. Rowland

> discussed guilty pleas with him. However, the post-conviction court clearly found Mr. Craig's and Mr. Quirk's testimony that Mastin was informed of all guilty plea offers to be credible and it is not the role of this court to reassess their credibility on appeal. *Hall*, 849 N.E.2d at 468-69. Because the record supports the post-conviction court's determination Mastin was informed of the guilty plea offers made to him, we hold the post-conviction court did not err in concluding Mastin's trial counsel did not render ineffective assistance.

*Id.* at *4.

The court also addressed the second prong of *Strickland* in a footnote:

> Although we need not address the second prong of *Strickland* in light of our conclusion Mastin's trial counsel did not render deficient performance, we nonetheless find Mastin's argument fails because he has not established a "reasonable probability [he] would have accepted the earlier plea offer...." *Frye*, 132 S.Ct. at 1409. At the post-conviction hearing, Mastin testified, "[I]f they would have ... communicated especially that last plea offer, most likely I would have took [sic] that under some consideration." Tr. at 25. From this statement, we cannot definitively say Mastin would have even considered the guilty plea. Therefore, even if we assume his trial counsels' performance was deficient, we conclude Mastin has not established a reasonable probability he would have accepted the guilty plea offers.

*Id.* at n.2.

This assessment—resting on both prongs of a claim of ineffective assistance of counsel—is compatible with the federal *Strickland* standard. And because of this reasonable application of the controlling federal standard, "[u]nder AEDPA . . . it cannot be disturbed." *Hardy v. Cross,* 132 S. Ct. 490, 495 (2011). Accordingly, Mr. Mastin is not entitled to habeas relief on this ground.

### IV. Conclusion

This Court has carefully reviewed the state record in light of Mr. Mastin's claims and has given such consideration to those claims as the limited scope of its review in a habeas corpus proceeding permits.

Having applied the appropriate standard of review, and having considered the pleadings and the record, Mr. Mastin's petition for writ of habeas corpus must be **denied.**

Judgment consistent with this Entry shall now issue.

### V. Certificate of Appealability

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2254 proceedings, and 28 U.S.C. § 2253(c), the Court finds that the petitioner has failed to show (1) that reasonable jurists would find this court's "assessment of the constitutional claims debatable or wrong," or (2) that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether [this court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The Court therefore **denies** a certificate of appealability.

**IT IS SO ORDERED.**

Date: 2/13/2018

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JARRAD L. MASTIN
215097
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Jesse R. Drum
INDIANA ATTORNEY GENERAL
jesse.drum@atg.in.gov